Anthony SABELLA, et al., Plaintiffs,

v.

UNITED STATES, et al., Defendants,

and

Earth Island Institute, Intervenor–Defendant.

Civ. A. No. 94–0350 (JLG).

United States District Court,
District of Columbia.

June 27, 1994.

James P. Walsh and Richard L. Cys, David Wright Tremaine, Washington, DC, for plaintiffs.

Charles R. Shockey, U.S. Dept. of Justice, Environment and Natural Resources Div., Washington, DC, for defendants.

David C. Vladeck, Public Citizen Litigation Group, Washington, DC, for intervenor-defendant.

Joshua R. Floum and Nichollas W. Van Aelstyn, Heller, Ehrman, White & McAuliffe, San Francisco, CA, pro hac vice.

## MEMORANDUM

JUNE L. GREEN, District Judge.

### I. Introduction

This case comes before the Court on the parties' cross-motions for summary judgment. Because the Court finds that no "final agency action" has occurred in this matter, it will dismiss this case without prejudice.

### II. Facts

The Plaintiffs are United States citizens who have been employed in the past and wish to be employed in the future as captains or crew on board tuna fishing vessels documented under the flags of Mexico, Venezuela and Vanuatu. The vessels on which Plaintiffs are employed engage in the encirclement of dolphins during fishing operations for yellowfin tuna in the eastern tropical Pacific Ocean. (Pls.Ex. 7.) Such encirclement is termed a "taking" within the meaning of the Marine Mammal Protection Act of 1972, 16 U.S.C. § 1362(13) (hereinafter, "MMPA"). On January 7, 1994, counsel for the Plaintiffs wrote a letter to the General Counsel of the National Oceanic and Atmospheric Administration (hereinafter, "NOAA") requesting a "definitive statement" of the NOAA's interpretation of Section 307(a)(2) of the International Dolphin Conservation Act of 1992, 16 U.S.C. § 1417(a)(2) (hereinafter, "IDCA")[1] and whether it applied to United States citizens who work as captains or crew on foreign flag tuna fishing vessels. (Pls.Ex. 2.) In the letter, counsel for Plaintiffs stated,

[M]y clients have received the preliminary views of the National Marine Fisheries Service (NMFS) that the agency plans to enforce a prohibition contained in the 1992 Amendments that reads as follows: It is unlawful ... for any person or vessel that is subject to the jurisdiction of the United States, intentionally to set a purse seine net on or to encircle any marine mammal during any tuna fishing operations after February 28, 1994.... The preliminary NMFS position would apply the prohibition on setting on dolphin schools ... to U.S. citizens who are working on foreign-flag tunaboats.... (Pls.Ex. 2 at 2–3.)

Counsel for Plaintiffs warned the General Counsel for the NOAA that the effective date of the ban was over six weeks away and that if she confirmed the alleged preliminary views of the NMFS, his clients would be left with little choice but to seek judicial relief. (Pls.Ex. 2 at 3.)

On February 24, 1994, the Plaintiffs filed a Complaint for Declaratory and Injunctive Relief to prevent the Defendants from enforcing the Encirclement Provision of the IDCA against Plaintiffs when they work on foreign flag vessels.

The next day, February 25, 1994, General Counsel of the NOAA sent counsel for Plaintiffs a letter which stated that the NOAA General Counsel's staff had reviewed counsel for Plaintiffs' letter of January 7, 1994. (Pls. Ex. 1.) After quoting the relevant portion of the Encirclement Provision and indicating that the statutory exceptions were inapplicable, the NOAA General Counsel stated,

[I]t is my opinion that U.S. citizens may not lawfully engage in any foreign tuna fishing operations after February 28, 1994 that would involve the intentional encirclement of marine mammals unless they are engaged in scientific research approved by the IATTC. In the near future the National Marine Fisheries Service will issue rules to inform the public of this interpretation. (Pls.Ex. 1.)

The Defendants state that NOAA has not taken, or threatened to take, any enforce-

---

**1.** This statute reads:
(a) In general
It is unlawful— ...
(2) for any person or vessel that is subject to the jurisdiction of the United States, intentionally to set a purse seine net on or to encircle any marine mammal during any tuna fishing operation after February 28, 1994,....

This is known as the "Encirclement Provision" because it forbids the encirclement of dolphins during tuna fishing operations. For the purposes of this opinion the Court will use the term "Encirclement Provision" when discussing 16 U.S.C. § 1417(a)(2).

ment action against the Plaintiffs with regard to the Encirclement Provision.

Defendants filed a summary judgment motion and asked this Court, *inter alia*, to dismiss Plaintiffs' case because the Plaintiffs seek pre-enforcement judicial review in the absence of any administrative enforcement actions resulting in final agency action.

## III. Discussion

Since federal courts exercise limited jurisdiction, this Court can only review the actions of an agency if authorized by statute. *Bell v. New Jersey*, 461 U.S. 773, 777, 103 S.Ct. 2187, 2190, 76 L.Ed.2d 312 (1983). In order to review the NOAA's interpretation of the Encirclement Provision, this Court must base its jurisdiction on 5 U.S.C. § 704 which permits federal district courts to review "final agency action" for which there is no other adequate remedy in Court. Administrative Procedure Act § 10(c), 5 U.S.C. § 704. Since "final agency action" is an independent jurisdictional requirement it must be met first before moving on to the question of ripeness. *Public Citizen v. Office of U.S. Trade Representatives*, 970 F.2d 916, 921 (D.C.Cir.1992). The requirement of "final action" recognizes that courts must not interfere with the executive function, whether exercised by executive officials or administrative agencies, by entertaining a lawsuit that challenges an action that is not final. *National Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 698 (D.C.Cir.1971).[2]

By enacting a provision permitting judicial review of "final agency action" for which there is no other adequate remedy in a court, Congress intended to cover a broad spectrum of administrative actions, and the Supreme Court has reaffirmed that intent by holding that the Administrative Procedure Act's generous review provisions must be given a hospitable interpretation. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140–

41, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); *See, National Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 695 (D.C.Cir.1971). Judges reviewing administrative actions must interpret the "finality" element in a flexible and pragmatic way. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). The term "agency action" includes any "rule", and that in turn is defined by the Act as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret or prescribe law or policy." Administrative Procedure Act §§ 2(c), 2(g), 5 U.S.C. §§ 551(4), 551(13). The term "agency action" thus embraces an agency's interpretation of its law, and it is the finality of that action that a Court must consider. *Id.* The Supreme Court has explained that the relevant considerations in determining finality are whether the process of administrative decision-making has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences flow from agency action. *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209–10, 27 L.Ed.2d 203 (1970). A court must decide whether the agency's position is definitive and whether it has a direct and immediate effect on the day-to-day business of the parties challenging the action. *Natural Resources Defense Council, Inc. v. E.P.A.*, 22 F.3d 1125, 1132–33 (D.C.Cir.1994). An agency position is not final if it is only the ruling of a subordinate official. *Franklin v. Massachusetts*, — U.S. —, —, 112 S.Ct. 2767, 2773, 120 L.Ed.2d 636 (1992). The Court must distinguish a tentative agency position from a situation where the agency views its deliberative process as sufficiently final to demand compliance with its announced position. *Natural Resources Defense Council, Inc. v. E.P.A.*, 22

---

**2.** Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise. *FTC v. Standard Oil Co.*, 449 U.S. 232, 242, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980); *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466–67, 45 L.Ed.2d 522 (1975). Intervention also leads

to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary. *Id.; McGee v. United States*, 402 U.S. 479, 484, 91 S.Ct. 1565, 1568–69, 29 L.Ed.2d 47 (1971); *McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969).

F.3d 1125, 1132–33 (D.C.Cir.1994). The absence of a formal statement of the agency's position is not always dispositive, otherwise an agency could avoid judicial review simply by choosing the form of a letter to express its definitive position on a general question of statutory interpretation. *Id.* In addition, agency inaction may represent effectively final agency action that the agency has not frankly acknowledged. *Her Majesty the Queen v. United States EPA,* 912 F.2d 1525, 1531 (D.C.Cir.1990). Even if the agency claims to be in the process of rulemaking the Court must be aware that the agency always retains the power to change its policies. If the possibility of unforeseen amendments were sufficient to render an otherwise fit challenge unripe, review could be deferred indefinitely. *American Petroleum Institute v. United States EPA,* 906 F.2d 729, 739–40 (D.C.Cir.1990).

■ The Court has found final action in a wide array of pronouncements and communications having the contemplation and likely consequence of "expected conformity". *National Automatic Laundry & Cleaning Council v. Shultz,* 443 F.2d 689, 698 (D.C.Cir. 1971). The spectrum of communications ranges from obvious agency action such as adjudications and regulations to informal pronouncements such as opinion letters. Informal pronouncements of policy provide a court with more difficult finality issues. Plaintiffs case, involving the legal opinion letter of the NOAA General Counsel, presents the Court with this precise problem. In other words, the Court must determine whether the February 25, 1994 letter of the NOAA General Counsel qualifies as "final agency action" under 5 U.S.C. § 704.[3]

The case of *National Automatic Laundry and Cleaning Council v. Shultz,* 443 F.2d 689 (D.C.Cir.1971), offers guidance in the determination of whether informal agency opinion letters qualify as "final agency action." In that case the attorney for the National Automatic Laundry and Cleaning Council (hereinafter, "NALCC") sent a letter to the Administrator of the Wage and Hour Division of the Department of Labor inquiring about the effect of recently passed amendments to the Fair Labor Standards Act on the status of employees of coin-operated laundries. The Administrator replied to the NALCC attorneys and stated that the legislative history of the amendments clearly indicated that the employees of coin-operated laundries were covered by the amendments' minimum wage and overtime requirements. The NALCC then brought a declaratory judgment action challenging the Administrator's interpretation of the amendments.

The court found that the Administrator's advisory letter constituted "final agency action".[4] But the court also couched its ruling in restrictive language that pertains to the case presently before this Court. The court held:

> When a published interpretation represents the initial views of an agency, approved by the Commission or person who heads the agency, when it is the product of the process provided by the agency for taking into account the position of agency staff as well as the outside presentation, when the interpretation is not labeled as tentative or otherwise qualified by arrangement for reconsideration, it has the feature of "expected conformity" stressed in *Abbott Laboratories. Id.* at 702.

Though letters of agency counsel were not within the explicit scope of its ruling, the court in *National Automatic Laundry & Cleaning Council* stated that the overwhelming majority of agency responses to inquiries will not be appropriate for review. *Id.* at 701. It sought to distinguish a "letter intended as a deliberate determination of the

---

3. Counsel for Plaintiff's letter of January 7, 1994 referred to "preliminary views of the National Marine Fisheries Service" which indicated that the Encirclement Provision applied to Plaintiffs. Characterization of the NMFS decision as "preliminary views" hints that the NMFS position is tentative. The record does not, however, offer enough evidence for the Court to decide whether the NMFS has taken "final agency action."

4. In fact, the court held that courts should accept the ruling of a board or commission, or the head of an agency as presumptively final. *National Automatic Laundry & Cleaning Council v. Shultz,* 443 F.2d 689, 701 (D.C.Cir.1971).

agency's position at the highest available level on a question of importance" from "the mass of interpretative correspondence." *Id.*

Courts make this distinction because advisory opinions should, to the greatest extent possible, be available to the public as a matter of routine. *Id.* at 699–700. The concerns of citizens engaged in forward planning may call for advisory consultation with cognizant government officials, in order to obtain informal predictions needed to permit optimum allocation of resources in the light of careful assessments of the alternatives. *Id.* at 699. The court stated that it would be unfortunate if the prospect of judicial review were to make an agency reluctant to give advice. *Id.* at 700.

A pragmatic interpretation of the NOAA General Counsel's letter leads the Court to hold that "final agency action" has not yet occurred in this matter. The letter does not reflect a definitive agency position on the Encirclement Prohibition. The majority of the one-page letter simply quotes the statute. There is no legal analysis except for the General Counsel's opinion that, " . . . U.S. citizens may not lawfully engage in any foreign tuna fishing operations after February 28, 1994 that would involve the intentional encirclement of marine mammals unless they are engaged in scientific research approved by the IAATC." [5] Though extraterritorial application of the statute is a critical issue in this case, the letter contains no specific reference to where the statute will be enforced. A fair interpretation of this letter is that the statute applies everywhere, yet this conflicts with the agency's argument on the merits that the law does not apply in the territorial waters of other countries. Though Plaintiffs may not care to fish in the territorial waters of foreign countries anyway, the vague nature of this statement is relevant in that the agency's lack of clarity belies any notion that they demand immediate compliance with this interpretation.

The NOAA General Counsel also demonstrates that the agency does not view its deliberative process as final when she states that the NMFS will issue rules to inform the public of her interpretation of the statute. Though the D.C. Circuit Court of Appeals in *American Petroleum Institute v. United States EPA*, 906 F.2d 729, 739–40 (D.C.Cir. 1990), cautioned courts to be skeptical of agency claims of imminent amendments to rules, the case before the Court involves a situation where no rulemaking has taken place yet. The Court cannot reasonably conclude that the agency is trying to avoid judicial review through disingenuous claims that the agency is in the process of amending a final rule through additional rulemaking.

The Court distinguishes this case from *National Automatic Laundry and Cleaning Council*. In that case, the head of an agency responded by letter, whereas in this case the General Counsel of the agency, a subordinate official, issued an opinion. Though the General Counsel can probably provide a highly educated guess as to the decisions an agency will make, she is not a decision-maker at the highest level and therefore, her opinion does not create any law or bind the Administrator.[6] Her letter does not have the direct and

---

5. The Court also notes that the NOAA General Counsel's letter is dated the day after the Plaintiffs instituted this present case. In *American Federation of Government Employees v. O'Connor*, 747 F.2d 748, 755 fn. 23 (D.C.Cir.1984), the court said in *dicta* that it would be difficult to regard an advisory opinion, reflected upon, researched, and written on four days' notice—at the behest of parties who held the Special Counsel's feet to the fire of litigation while providing him with few facts—as a product of the agency's considered judgment. While counsel for Plaintiffs' letter was seven weeks old and factually detailed, the timing of the General Counsel's response and its brevity suggest that the agency's position was not sufficiently definitive. Though lack of formality is not dispositive with respect to

the issue of "final agency action," it is a factor in the Court's analysis.

6. This case is analogous to *American Federation of Government Employees v. O'Connor*, 747 F.2d 748 (D.C.Cir.1984), which involved an opinion letter of the Special Counsel to the Merit Systems Protection Board. In ruling that a case was not ripe, the court characterized the opinion letter in the following way:

Advice of Special Counsel creates no law and binds neither the public nor any agency or officer of government. Here, we have only the advice of an officer Congress did not authorize to speak definitively. The Special Counsel neither represents the views of the MSPB nor holds sway over it; his advisory opinions offer

immediate impact on the Plaintiffs that is necessary for finality. In fact, the General Counsel limited her letter by claiming that it reflected her own opinion. The Administrator is still free to disagree with the General Counsel's interpretation and the Court believes that it must give the agency an opportunity to reconsider this opinion so as to prevent excessive judicial interference with agency policy formation.

The Court would describe the opinion letter of the NOAA General Counsel as part of the "mass of interpretative correspondence" which the *National Automatic Laundry and Cleaning Council* cautioned courts not to review. A finding of "final agency action" in this case would discourage the NOAA General Counsel from responding to inquiries from the public regarding her interpretation of various statutes or her estimate of agency policy. It would also come at the expense of the agency's independence from judicial meddling. This price is too high.

## IV. Conclusion

Based on the foregoing reasons, the Court concludes that the NOAA has not taken "final agency action" in this matter. Judicial review at this point would be premature. The court, therefore, dismisses Plaintiffs' complaint without prejudice.

essentially a forecast, albeit an educated one, of the way the MSPB would rule if an actual

case materialized. *Id.* at 752–53.