**TRANSPORT ROBERT (1973)
LTEE, Plaintiff,**

v.

**U.S. IMMIGRATION AND NATURAL-
IZATION SERVICE, Defendant.**

**Civil Action No. 96–00443.**

United States District Court,
District of Columbia.

Sept. 26, 1996.

Jeremy Kahn, Kahn & Kahn, Washington, DC, for plaintiff.

Keith V. Morgan, U.S. Attorney's Office, Washington, DC, for defendant.

### MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Plaintiff's motion for summary judgment and Defendant's cross-motion for dismissal or, in the alternative, summary judgment. The Court heard arguments on the motions on September 19, 1996. After considering the motions, all opposition thereto, and the arguments by the parties, the Court remands this matter to Defendant for further action.

### BACKGROUND

Plaintiff is a Canadian trucking company. Its Canadian drivers may enter the U.S. under the Immigration & Nationality Act (the "Act") to work temporarily as drivers so long as they are engaged in a continuation of international transportation rather than "purely domestic service or solicitation, in competition with United States operators." 8 C.F.R. § 214.2(b)(4)(i)(E)(1).

Since 1993, Plaintiff has been operating a warehouse in Taylor, Michigan from which it delivers shipments of paper under a contract with Domtar Incorporated, a Canadian paper manufacturer. Plaintiff fills customer orders in Taylor sometime after paper shipped from various locations in Canada arrives at that site.

On July 21, 1995, Plaintiff sought advice regarding the propriety of using Canadian truck drivers to deliver paper from the Michigan warehouse to other points within the United States, writing to the Associate Commissioner of the Immigration and Naturalization Service ("INS"), Louis D. Crocetti, Jr. On October 25, 1995, Yvonne M. LaFleur, Chief of Nonimmigrant Branch Adjudications, responded to Plaintiff's inquiry with a letter explaining that Plaintiff's Canadian truck drivers could not perform point-to-point delivery service within the United States as "B–1 business visitors" pursuant to the Act (the "LaFleur Letter").[1] The LaFleur Letter concluded that:

> the Canadian driver is not performing international transport, even though the goods themselves may have originated in Canada. Regardless of the origin of the goods, the driver is not transporting that load either into or out of the country, but transporting the load from one point in the United States to another point in the United States. In effect, the Canadian driver is both loading and unloading goods within the United States, which constitutes cabotage or point-to-point hauling within the United States. In addition, the interchange of trailers in this situation constitutes a break in the continuous international movement of goods such that the portion of the transport within the United States is interposed as a domestic movement of goods, or cabotage.

On March 8, 1996, Plaintiff filed this action, seeking declaratory and injunctive re-

---

**1.** A "B–1 business visitor" in this context would be a Canadian "having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily on business." 8 U.S.C. § 1101(a)(15)(B).

lief. Plaintiff subsequently filed a motion for summary judgment, characterizing the La-Fleur Letter as a "ruling" and asking this Court to set aside such ruling as arbitrary, capricious and an abuse of agency discretion. 5 U.S.C. § 706. In its motion for summary judgment, Plaintiff argues that (1) the INS treatment of Plaintiff's request for ruling in its July 21, 1995 letter was so cursory as to be arbitrary and capricious *per se* and (2) upon consideration of Plaintiff's arguments on its merits, the Court should find that Plaintiff's position is so "correct" that it should issue the requested declaratory relief.

In lieu of an answer, Defendant opposed plaintiff's motion for summary judgment and filed its own motion to dismiss, the latter motion argued on the grounds that the matter does not currently present the Court with any "final agency action" to review pursuant to the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 551, *et seq.* In the alternative, Defendant filed a cross-motion for summary judgment on the grounds that Plaintiff has not established that INS' actions were arbitrary and capricious.

## ANALYSIS

■ While this Court takes no position on the merits of Plaintiff's claim, it concludes that it would not be prudent to decide the case on a substantive basis because the La-Fleur Letter does not constitute "final agency action" at this time. As a first step toward resolving this matter, this Court remands this matter to Defendant for further action. This Court does not now reach the issue of whether Defendant's actions were "arbitrary or capricious."

■ This Court can only review the actions of an agency if authorized by statute. *Bell v. New Jersey,* 461 U.S. 773, 777, 103 S.Ct. 2187, 2190, 76 L.Ed.2d 312 (1983). In order to review INS' interpretation of the Act with respect to "B–1 business visitors,"

the Court must base its jurisdiction on the APA. The APA permits federal district courts to review "final agency action" for which there is no other adequate remedy in a court. 5 U.S.C. § 704. The requirement of "final agency action" recognizes that courts must not interfere with the executive function, whether exercised by executive officials or administrative agencies, by entertaining a lawsuit that challenges an action that is not final. *National Automatic Laundry & Cleaning Council v. Shultz,* 443 F.2d 689, 698 (D.C.Cir.1971) ("NALCC").[2] The finality requirement is similar to the requirement of ripeness, although "furthering slightly different interests." 740 F.2d at 30.

■ The ripeness doctrine requires courts to consider two factors, "the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Friends of Keeseville, Inc. v. FERC,* 859 F.2d 230, 234–35 (D.C.Cir. 1988). The degree of finality of agency action is the key consideration in evaluating its "fitness for judicial review" under the ripeness doctrine. *Ciba–Geigy v. EPA,* 801 F.2d 430, 435–36 (D.C.Cir.1986); *Midwestern Gas Transmission Co. v. FERC,* 589 F.2d 603, 618 (D.C.Cir.1978). Hardship considerations "will rarely overcome the finality and fitness problems inherent in attempts to review tentative positions" of agencies. *Public Citizen,* 740 F.2d at 31.

In *NALCC,* this circuit set the parameters for deciding when a letter produced by an agency in response to an inquiry can qualify as "final agency action." In that case, an attorney for NALCC sent a letter to the Administrator of the Wage and Hour Division of the Department of Labor inquiring about the effect of recently passed amendments to the Fair Labor Standards Act on the status of employees of coin-operated laundries. The Administrator replied by let-

---

**2.** Judicial intervention prior to "final agency action" does not "permit the agency an opportunity to correct its own mistakes and to apply its expertise;" an additional policy objective is to "prevent piecemeal review which at the least is inefficient and upon completion of the agency process might prove to be unnecessary." *Public*

*Citizen Health Research Group v. Comm'r, FDA,* 740 F.2d 21, 30 (D.C.Cir.1984), quoting *FTC v. Standard Oil Co. of California,* 449 U.S. 232, 242, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980). *See also Sabella v. U.S.,* 863 F.Supp. 1, 3 (D.D.C. 1994).

ter that the legislative history of the amendments clearly indicated that the employees of coin-operated laundries were covered by the amendments' minimum wage and overtime requirements and the circuit court held that the Administrator's letter constituted "final agency action." *Id.* at 701.

But the *NALCC* court limited its holding to the rulings of a board or commission, or the head of an agency, as being presumptively final. *Id.* at 701. In addition, the Court stated that the overwhelming majority of agency responses to inquiries will not be appropriate for review since the bulk of these decisions are not issued by agency heads. *Id.* at 702. The court distinguished a letter intended as a deliberate determination of the agency's position from "the mass of interpretative correspondence." *Id.* This circuit has also held elsewhere that "[t]here is impressive authority for ... [the] assertion that opinions of subordinate, legal personnel within an agency are not reviewable 'final agency action.'" *Student Loan Marketing Ass'n ("Sallie Mae") v. Riley,* 907 F.Supp. 464 (D.D.C.1995),[3] *citing Am. Fed'n of Gov't Employees v. O'Connor,* 747 F.2d 748 (D.C.Cir. 1984), *cert. denied,* 474 U.S. 909, 106 S.Ct. 279, 88 L.Ed.2d 243 (1985).

The LaFleur Letter also cannot be construed at this time as "final agency action." Under INS' Uniform Subject Filing System the LaFleur Letter was designated by a "C" appearing on the top of the first page, indicating a correspondence letter rather than a policy position or advisory opinion by INS. *INS Uniform Subject Filing System* (June 1995), 2–3.

■ According to Defendant, the appropriate means for Plaintiff to seek "final agency action" would be for individual drivers to present themselves at the border and apply for admission pursuant to 8 U.S.C. §§ 1225 and 1226. After being denied entry, Plaintiff's drivers might then seek a hearing before an immigration judge with the appropriate authority. See 8 C.F.R., part 3, *et seq,* and § 236. It is only after this elaborate administrative process is complete, Defendant argues, that the issue of whether Plaintiff's drivers doing point-to-point business travel within the United States might be eligible for admission to the U.S. as "B–1 business visitors" would be reviewable by a federal district court. 8 U.S.C. §§ 1105a(b), 1225 and 1226.

Plaintiff claims that the INS' suggested course of action is inadequate for its purposes, arguing that without judicial review there is simply no way to challenge an alleged "agency ruling" which has an immediate and severe adverse impact on it. Plaintiff also points to the real business costs of the course of action proposed by INS. During the months of review, a driver denied entry could not enter the U.S. for any purpose and would consequently be unavailable as a practical matter to work for Plaintiff as a driver.[4] Moreover, no such proceeding could result in a ruling of general applicability. Any one driver could testify only as to his own activities and not as to the activities or the circumstances of all of the drivers at the Taylor facility, despite the fact that there are certain characteristics common to all the paper shipments through the Taylor facility.

This Court has considerable sympathy for the plight of Plaintiff, a small business trying to minimize its labor costs in a tough and competitive international market.[5] The course of action proposed by Defendant

---

**3.** While the court in *Sallie Mae* ultimately concluded that the letters at issue did constitute "final agency action," that conclusion was based on facts distinguishable from the facts in this case. In *Sallie Mae,* the letters at issue were "replete with indications that the opinions were those of the Secretary of Education." 907 F.Supp. at 472.

**4.** Defendant acknowledged that it started a proceeding against one of Plaintiff's drivers which was subsequently dismissed and claims that Plaintiff should have gone forward with that pro-

ceeding rather than ask for an interpretive ruling. Plaintiff claims that it could not afford to continue to pay the individual driver during the prolonged (i.e. seven months until dismissal of the case) period he would be unable to work; moreover, Plaintiff was seeking a ruling of general applicability which, it claims, no decision in the case of an individual driver would provide.

**5.** "Hardship" is also one of the criteria evaluated with respect to determining "ripeness," albeit a lesser consideration. *Public Citizen,* 740 F.2d at 31.

342

would be long, costly and unlikely to result in a comprehensive resolution of the issue.

In this era of "lite products," Defendant should be able to respond in a "final" way to legitimate questions which involve significant business costs to the Plaintiff. The Court is not convinced that the only way to get a definitive ruling from INS is to engage in the form of "agency roulette" described above. It does appear that there are sufficient characteristics common to all of Plaintiff's paper shipments through the Taylor facility to allow the issue of "B–1 business visitors" to be addressed comprehensively with respect to this matter.

It is unbecoming for an agency to hide behind justiciability as a means to avoid review. Other agencies have found a way to meet the needs of its constituents. Defendant's action in this case is a prime example why the bureaucracy is currently under severe criticism from the public. Muscle bound federal agencies can no longer exist as they have in the past. They must be able to respond quickly and appropriately if they are to avoid extinction. Plaintiff in this case is in need of a definitive response in order to carry out important business planning. It must be able to obtain a response to its legitimate requests and be able to seek appropriate review if Plaintiff believes it has a reasonable basis for doing so. Defendant's answer that in order for Plaintiff to obtain a definitive response, it must hold one of its employees in a "hostage" status for some seven months or probably longer, is both unacceptable and indeed, unconscionable at this time in this nation's history. An agency must be more responsive to those it regulates.

Accordingly, this Court remands this matter to Defendant to: (1) provide a response that does constitute "final agency action" upon which Plaintiff can rely to seek review; or (2) come back before this Court and give a better explanation as to why this agency cannot provide such "final agency action."

### ORDER

Having considered plaintiff's motion for summary judgment, defendant's motion to dismiss, or in the alternative, defendant's cross-motion for summary judgment, all opposition thereto, argument by the parties, and for the reasons stated in the foregoing opinion, this matter is remanded to defendant for further action. It is hereby

**ORDERED** that, defendant shall either (1) take "final agency action" with respect to defendant's interpretation of the "B–1 business visitor" provision of the Immigration & Nationality Act 8 U.S.C. § 1101(a)(15)(B), and upon which plaintiff can rely to seek review; or (2) within 60 days, give a better explanation as to why INS cannot take such action.